739 N.E.2d 1043 (2000)
317 Ill.App.3d 445
251 Ill.Dec. 110
In the Matter of J.D. (Jane Doe, Plaintiff-Appellant, v. John Noe and Jill Noe, Defendants-Appellees).
No. 4-00-0304.
Appellate Court of Illinois, Fourth District.
November 21, 2000.
Rehearing Denied December 19, 2000.
*1045 David E. Neely (argued), Chicago, for Jane Doe.
Don C. Hammer (argued), Hayes, Hammer, Miles, Cox & Ginzkey, Bloomington, for John Noe.
Justice MYERSCOUGH delivered the opinion of the court:
In December 1999, plaintiff, referred to herein as Jane Doe, filed a motion pursuant to section 2-1203 of the Code of Civil Procedure (Code) (735 ILCS 5/2-1203 (West 1998)) seeking reconsideration of a March 1999 order denying her motion to vacate a June 1998 adoption judgment involving defendants, referred to herein as the Noes, and the minor child referred to herein as J.D. She also sought relief from the adoption judgment pursuant to section 2-1401 of the Code (735 ILCS 5/2-1401 (West 1998)). The Noes filed a motion to dismiss pursuant to section 2-619 of the Code (735 ILCS 5/2-619 (West 1998)). In March 2000, the trial court granted the Noes' motion because Jane Doe lacked standing. Jane Doe appealed. We affirm.

I. BACKGROUND
J.D. was born in August 1993. His mother, referred to herein as Joyce Doe, had tested positive for cannabis and cocaine at delivery. J.D. also tested positive at birth for cannabis and cocaine, and he was taken into protective custody two days after birth. J.D. was adjudicated a neglected minor in September 1993, and in October 1993 the Department of Children and Family Services (DCFS) became his guardian. He was placed with his maternal aunt, Jane Doe. In January 1996, Joyce Doe signed a final and irrevocable surrender of her parental rights as to J.D., and she acknowledged her surrender before a juvenile court judge. In April 1996, the State filed a petition to terminate Joyce Doe's parental rights. In July 1996, the *1046 trial court terminated Joyce Doe's parental rights and gave DCFS authority to consent to J.D.'s adoption. Jane Doe never filed a petition to adopt J.D.
In January 1997, DCFS removed J.D. from Jane Doe because he had bruises consistent with those received from a spanking. DCFS indicated the abuse report and placed J.D. with different foster parents. Jane Doe administratively appealed J.D.'s removal and the indicated abuse report. Hearings in the administrative appeal were delayed several times until DCFS voluntarily "unfounded" the abuse report in December 1998. At a permanency hearing in July 1997, the circuit court expressed concern that the delays in the administrative appeal were holding up J.D.'s potential adoption. The judge recessed the hearing until August 1997 to allow the counsel for DCFS to consult with DCFS' regional counsel to find a way to expedite or "get around" the appeals process. In August 1997, the circuit court found that the permanency goal of adoption had not been achieved and that it was in J.D.'s best interests to be immediately placed in an adoptive home. The court also terminated Jane Doe's visitation with J.D.
In December 1997, the Baby Fold, a private agency, placed J.D. with the Noes. In February 1998, the Noes filed a petition to adopt J.D. In May 1998, DCFS provided its written consent to J.D.'s adoption by the Noes. In June 1998, the Noes obtained an adoption judgment.
In December 1998, Jane Doe filed her first motion in the instant case (No. 98-AD-10) pursuant to section 2-1401 of the Code (735 ILCS 5/2-1401 (West 1998)), seeking to vacate the adoption judgment. She alleged that she had due process and equal protection rights that were violated because DCFS wrongfully removed J.D. from her and she was not notified of adoption proceedings. In March 1999, the trial court dismissed her motion, and she filed a notice of appeal, which we docketed as No. 4-99-0201. Later in March 1999, Jane Doe retained another counsel and filed a petition in the instant case (No. 98-AD-10) to obtain a writ of habeas corpus. In April 1999, the circuit court dismissed Jane Doe's habeas corpus petition, holding that the trial court had no jurisdiction while her appeal was pending. Jane Doe made a motion in this court to dismiss her appeal, and we granted that motion (No. 4-99-0201 (April 20, 1999) (dismissed upon appellant's motion)).
In June 1999, Jane Doe filed another habeas corpus petition, this time in a separate action involving J.D., case No. 99-MR-74 (Cir. Ct. McLean Co.). In December 1999, the circuit court dismissed that petition, and Jane Doe appealed (In re J.D., 317 Ill.App.3d 419, 251 Ill.Dec. 103, 739 N.E.2d 1036 (2000)).
In December 1999, Jane Doe filed another petition in the instant case (No. 98-AD-10) pursuant to section 2-1401 of the Code (735 ILCS 5/2-1401 (West 1998)), seeking relief from the adoption judgment. She requested that her December 1998 motion to vacate the adoption judgment be reopened to allow her to present additional evidence and arguments. She also sought reconsideration pursuant to section 2-1203 of the Code (735 ILCS 5/2-1203 (West 1998)) of the March 1999 order denying her December 1998 motion to vacate the adoption judgment. The Noes filed a motion to dismiss pursuant to section 2-619 of the Code (735 ILCS 5/2-619 (West 1998)). In March 2000, the trial court granted the Noes' motion because Jane Doe lacked standing, and this appeal followed.

II. ANALYSIS

A. Petition To Reconsider Denial of Original Section 2-1401 Motion
Jane Doe cannot succeed on a December 1999 motion for reconsideration under section 2-1203 because the trial court entered final judgment in March 1999 and that section requires that such motions be filed within 30 days of the *1047 entry of judgment. 735 ILCS 5/2-1203 (West 1998). After 30 days have passed, a court is without jurisdiction to vacate or modify its final judgment. Western States Insurance Co. v. Weller, 299 Ill.App.3d 317, 322, 233 Ill.Dec. 692, 701 N.E.2d 542, 546 (1998). When a motion to vacate a judgment is brought more than 30 days after the entry of a final judgment, that motion will ordinarily be construed as a petition for relief from a final judgment under section 2-1401 of the Code. Lodolce v. Central Du Page Hospital, 216 Ill. App.3d 902, 912, 159 Ill.Dec. 789, 576 N.E.2d 458, 465 (1991). Therefore, we can consider only whether Jane Doe was entitled to relief pursuant to section 2-1401.

B. Petition To Reopen Original Section 2-1401 Motion
Pursuant to section 2-1401 of the Code (735 ILCS 5/2-1401 (West 1998)), Jane Doe seeks to reopen her original section 2-1401 motion to present new evidence and arguments.
A trial court has no authority to grant relief under a section 2-1401 petition that raises the same issues as those raised in a previous section 2-1401 petition. In re Marriage of Kirk, 85 Ill.App.3d 805, 808, 41 Ill.Dec. 64, 407 N.E.2d 562, 565 (1980). This rule also bars successive section 2-1401 petitions that assert issues that could have been raised in the original petition. Village of Island Lake v. Parkway Bank & Trust Co., 212 Ill.App.3d 115, 123, 155 Ill.Dec. 751, 569 N.E.2d 1362, 1367 (1991). A section 2-1401 petition cannot be used to relitigate questions already validly adjudicated; its purpose is to bring before the trial court facts that do not appear on the record, which, if known to the trial court at the time the judgment was entered, would have prevented its rendition. Kirk, 85 Ill.App.3d at 808, 41 Ill. Dec. 64, 407 N.E.2d at 565.
Jane Doe retained new counsel and wanted to present additional arguments to the trial court in her second section 2-1401 motion. However, a party's desire to present new arguments does not provide a basis for a trial court to reopen a proceeding under section 2-1401 of the Code more than 30 days after judgment. Moreover, Jane Doe did not present any newly discovered evidence that existed in March 1999 when the trial court dismissed her initial section 2-1401 petition, which if known, would have prevented entry of judgment. Thus, the trial court appropriately denied Jane Doe's motion to reopen her initial section 2-1401 motion.

C. Second Section 2-1401 Motion To Vacate Adoption Judgment
If we construe Jane Doe's December 1999 section 2-1401 motion as a petition to vacate the June 1998 adoption judgment, it would be time-barred under section 20b of the Adoption Act (750 ILCS 50/20b (West 1998)), which provides:
"Time limit for relief from final judgment or order. A petition for relief from a final order or judgment entered in a proceeding under this [a]ct, after 30 days from the entry thereof under the provisions of [section] 2-1401 of the [Code] or otherwise, must be filed not later than one year after the entry of the order or judgment."
Thus, Jane Doe could not collaterally attack the June 1998 adoption judgment using section 2-1401 of the Code because she filed her December 1999 petition more than one year after the entry of the adoption judgment.

D. Standing
In addition, Jane Doe had no standing to intervene in J.D.'s adoption proceeding and file a section 2-1401 petition to vacate after the trial court entered an adoption judgment. A nonparty to a judgment has no standing to seek relief from that judgment by filing a section 2-1401 petition. See Gay v. Open Kitchens, Inc., 100 Ill.App.3d 968, 972, 56 Ill.Dec. 258, 427 N.E.2d 338, 342 (1981). Section 2-1401 was never intended to permit a *1048 person not a party to the action to intervene after final judgment and reopen the suit so as to permit a new claim to be filed. In re Estate of Reilly, 68 Ill.App.3d 906, 910, 25 Ill.Dec. 191, 386 N.E.2d 462, 465 (1979). Jane Doe was not a party in the adoption proceeding, and Jane Doe never filed a petition to adopt J.D. Thus, Jane Doe had no standing to seek to vacate the adoption judgment under section 2-1401 of the Code.

E. Jurisdiction
Jane Doe also characterizes the adoption judgment as void for lack of jurisdiction. We address this contention because a pleading that attacks a judgment for lack of jurisdiction is not required in certain circumstances to comply with section 2-1401 of the Code. People ex rel. McGraw v. Mogilles, 136 Ill.App.3d 67, 72, 90 Ill.Dec. 831, 482 N.E.2d 1114, 1118 (1985). Section 2-1401(f) of the Code preserves the existing right to seek relief from a void judgment by means other than section 2-1401. 735 ILCS 5/2-1401(f) (West 1998). A nonparty who collaterally attacks an adoption judgment can question only want of jurisdiction of subject matter. See Orme v. Northern Trust Co., 25 Ill.2d 151, 163, 183 N.E.2d 505, 512 (1962). A judgment is characterized as void and may be collaterally attacked at any time where the record itself furnished the facts that establish that the court acted without jurisdiction. In re Marriage of Stefiniw, 253 Ill.App.3d 196, 201, 192 Ill.Dec. 398, 625 N.E.2d 358, 362 (1993). However, where a motion to vacate a judgment is predicated upon error that is not apparent from the record and requires proof by other evidence, the party seeking to vacate the judgment must proceed under section 2-1401 and must comply with all of the requirements set forth in that section. Stefiniw, 253 Ill.App.3d at 201, 192 Ill.Dec. 398, 625 N.E.2d at 362.
Jane Doe asserts that the June 1998 adoption judgment is void because an alleged oral contract between DCFS and Joyce Doe converted Joyce Doe's general surrender to an agency into a specific consent in favor of Jane Doe. Thus, she argues that Joyce Doe's parental rights were not validly terminated and J.D. was not "available for adoption" as defined in section 1(F) of the Adoption Act (750 ILCS 50/1(F) (West 1998)). However, Jane Doe cannot establish that the trial court lacked jurisdiction with evidence outside of the record without complying with the requirements of section 2-1401 of the Code.
Even if Jane Doe did not have to comply with section 2-1401 of the Code, her challenge to Joyce Doe's surrender by asserting an oral contract of adoption is time-barred. Section 11(a) of the Adoption Act provides, in relevant part:
"No action to void or revoke a consent to or surrender for adoption, including an action based on fraud or duress, may be commenced after 12 months from the date the consent or surrender was executed." 750 ILCS 50/11(a) (West 1998).
One cannot seek to enforce an oral contract for adoption and challenge a trial court's jurisdiction to enter an adoption judgment after the time for setting aside the adoption judgment and consent have passed. See Street v. Hubert, 141 Ill. App.3d 871, 876, 96 Ill.Dec. 215, 491 N.E.2d 29, 32 (1986).
This one-year time limit on contesting adoptions promotes stability and finality in these cases. Children should not be left in limbo indefinitely.
In Jane Doe's December 1999 section 2-1401 petition, she alleged an oral contract for adoption. However, Joyce Doe executed a final and irrevocable surrender of her parental rights as to J.D. in January 1996, and the Noes obtained an adoption judgment in June 1998. Thus, Jane Doe could not challenge in December 1999 the validity of Joyce Doe's January 1996 surrender or the trial court's jurisdiction, and the trial court properly dismissed her petition to vacate the adoption judgment.
*1049 Finally, we do not find any evidence in the record of an oral contract for adoption. Jane Doe has not provided a transcript of the hearing at which Joyce Doe surrendered her parental rights, and Joyce Doe did not testify in the present proceeding. Instead, Jane Doe refers to a June 1996 DCFS "client service plan narrative" that mentioned, "[Joyce Doe], the natural mother, has surrendered her parental rights so that her sister, [Jane Doe], may proceed with [J.D.'s] adoption." Although this statement suggests Joyce Doe's expectation, it does not condition her surrender or in any way indicate that DCFS agreed to consent to J.D.'s adoption by Jane Doe. Also, Jane Doe refers to Joyce Doe's parental affidavit, which contains the question, "Has anyone threatened or made promises to you to encourage the surrender of the child?" Jane Doe alleges that someone other than Joyce Doe crossed out her "yes" response and noted the change with Joyce Doe's initials. However, Jane Doe has not supported her allegation with a transcript or bystander's report of the proceeding in which Joyce Doe acknowledged her surrender in open court. Nothing in this parental affidavit indicates that DCFS made any promises to or contract with Joyce Doe.

F. Other Issues
Jane Doe raises several other issues in her brief, but they are irrelevant to the validity of J.D.'s adoption by the Noes. Jane Doe had sufficient opportunity to file a petition to adopt J.D. before the Noes obtained their adoption judgment. She had actual notice of the pending adoption proceedings in March 1998, when she learned in open court of a pending petition to adopt J.D. However, she never filed a petition to adopt J.D., she never sought to intervene in the pending adoption proceeding, and she did not appear at the adoption proceeding. The two indicated reports against her and her pending administrative appeals of those reports did not preclude her from filing a petition to adopt J.D. She could have filed a petition to adopt J.D. at any time before the Noes obtained an adoption judgment because J.D. was then a "related child" as defined in section 1(B) of the Adoption Act (750 ILCS 50/1(B) (West 1998)). Thus, she would not have needed to allege in her petition that she had custody of J.D. or that DCFS consented. See 750 ILCS 50/5(C) (West 1998).
None of DCFS' or the circuit court's actions deprived the trial court of jurisdiction to enter an adoption judgment. Joyce Doe voluntarily surrendered her parental rights, and those rights were validly terminated. Later, Jane Doe had actual notice of pending adoption proceedings, and she could have filed her own petition to adopt J.D. Not only is Jane Doe procedurally barred from seeking relief, we find no basis in the record to disturb the adoption judgment.

III. CONCLUSION
For the reasons stated, we affirm the trial court's judgment.
Affirmed.
COOK, P.J., and STEIGMANN, J., concur.